UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARENCE DEAN,

        Plaintiff,

v.

CALHOUN COUNTY, *et al.*,

        Defendants.
_____/

Case No. 1:23-cv-408

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

Plaintiff Clarence Dean of Nassau, Bahamas, filed this lawsuit on April 19, 2023, in his capacity as the personal representative of the Estate of Jesse Dean. The United States is one of the defendants being sued. In the "Introduction" of the amended complaint (ECF No. 39), plaintiff stated that,

> Jesse Dean was an Immigration Customs Enforcement [ICE] detainee held at the Calhoun County Jail [jail] in Battle Creek, Michigan. He arrived at the jail on December 31, 2020. Shortly after arriving, he sought medical care for serious medical symptoms. His complaints were repeatedly dismissed and his symptoms ignored. After suffering from severe pain for over a month, he died on February 5, 2021, of a treatable condition.

Amend. Compl. at PageID.241. This matter is now before the Court on defendant United States' combined motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (ECF No. 42).

### I.   Background

Plaintiff set forth the following allegations. On January 2, 2021, Jesse Dean (referred to as "Mr. Dean" or the "decedent") submitted a sick call form stating he had abdominal pain. *Id*. at PageID.243. On January 14th, defendant RN Godzieblewski responded to his

complaint of stomach pain and loss of appetite and ordered him placed on a liquid diet for four days. *Id*. She did nothing else. *Id*. On January 22nd, an LPN saw Mr. Dean in connection with his report of "a great deal of abdominal pain" and gave him acetaminophen. *Id*. On January 24th, Mr. Dean "submitted a request notifying medical staff that he had lost 20 pounds in the last three weeks, was weak, could not eat regular meals, had severe stomach pains all night, and needed a special diet to address the matter." *Id*. at PageID.244. While medical staff responded to Mr. Dean, they did not treat his condition or refer him to a medical provider regarding the significant weight loss, severe stomach pains, and inability to eat regular meals. *Id*.

On January 25th, Mr. Dean reported to a housing deputy that he felt like he was going to die and told "an unknown jail or medical staff person" about his extreme abdominal pain. *Id*. When this person declined to send him to the hospital, he offered to pay for the visit. *Id*. Mr. Dean was told that a provider would see him on January 26th, but this did not occur. *Id*. at PageID.243-244. Mr. Dean submitted another request regarding his three weeks of severe pain and need for emergency care. *Id*. A provider saw him on January 27th. *Id*. at PageID.245.

On January 28th defendant Paul Troost, DO, received laboratory results which should have resulted in emergency evaluation and hospitalization. *Id*. However, the doctor did nothing. *Id*. Mr. Dean was seen by nurses on January 30th and 31st, but they did nothing to address his significant abdominal pain. *Id*. at PageID.245-246.

On or about February 1st, Mr. Dean called his sister Sharon to describe his pain, worsening condition, and that he felt he was dying. *Id*. at PageID.246. Sharon notified the Bahamian Consulate, which "contacted [non-party] Deportation Officer Fish and/or the jail about the situation but the defendants did nothing in response." *Id*. at PageID.247. Plaintiff alleged that "[s]upposedly, defendant John or Jane Doe told Fish that all was well." *Id*.

> The Consulate responded to the family "Good evening Ms. Dean, Vice Consul Gibson spoke with Fish this morning and Fish advised that Mr. Dean was seen by medical staff who 'confirmed he is not gravely ill, nor does he suffer from any debilitating sickness. It appears that your brother suffers from hypertension and high cholesterol and that these conditions are not threatening his life at this time.'" [sic] This was a lie and an effort to deceive Mr. [Jesse] Dean's family.

*Id*.

Mr. Dean's condition continued to deteriorate. *Id*. at PageID.247-249. On February 5th a staff member assessed and escorted him to the medical unit, where he was given an intravenous line for hydration. *Id*. at PageID.249. Mr. Dean became unresponsive, EMS was called, and he was pronounced dead in the ambulance at the Jail's sally port. *Id*. at PageID.250.

ICE conducted an investigation into his death and found "numerous instances of significant lapses in the medical care provided to Mr. Dean." *Id*. at PageID.251. Plaintiff further alleged that,

> [T]he Office of the Inspector General of ICE issued a report dated February 1, 2023. The IG evaluated the medical care provided nationwide to ICE detainees. In their self-serving report, they found that there were no problems with that medical care save one. That one was Mr. Dean. The IG's review of the medical files and autopsy report determined that Calhoun County Jail medical staff should have acted more swiftly to meet Mr. Dean's needs after correlating his complaints of worsening symptoms, significant weight loss, hypotension, and fall events. The report found that they did not take the appropriate action to address his continued gastrointestinal complaints, and thus the Inspector General's Report determined that the care provided was not appropriate.

*Id*.

In his Third Cause of Action plaintiff alleged that the United States violated the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, setting out the following allegations:

> 78. Defendant United States, through its agency, the Department of Homeland Security, Immigration and Customs Enforcement (ICE), contracted with defendant Calhoun County to house its detainees.
>
> 79. The defendant United States knew that Corizon was providing medical care to the detainees at the jail.

3

80. As articulated above they also knew that Corizon and the defendant Calhoun County had an egregious and long-standing history of providing unconstitutional, grossly insufficient medical care to inmates/detainees they were obligated to serve.

81. The defendant United States knew that this substandard healthcare by Corizon was provided not only to the inmates/detainees at the jail but to inmates and detainees throughout jails and prisons around the country.

82. Defendant United States has a non-discretionary duty to ensure that the medical needs of inmates/detainees in its custody are provided constitutionally adequate medical care.

83. By continuing to place its detainees, like Mr. Dean, in the jail under the care of defendant Calhoun and Corizon after becoming aware of these issues, the defendant United States of America violated that duty.

84. This violation of duty was the proximate cause of damage to Mr. Dean including, but not limited to excruciating pain and suffering, loss of enjoyment of life and his resulting death.

85. On August 2, 2022, the plaintiff served a Form 95 administrative claim against The Department of Homeland Security, Immigration and Customs Enforcement by Certified Mail at 950 L'Enfant Plaza, SW, Washington, DC 20536.

86. On March 20, 2023, the claim was denied.

Amend. Compl. at PageID.242, 255-256.  Plaintiff seeks compensatory damages, economic damages, costs and attorney's fees related to Mr. Dean's death.  *Id*. at PageID.256-257.

## II. Lack of subject matter jurisdiction

### A. Legal standard

The United States has moved to dismiss plaintiff's claim for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction" which "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted).  Federal subject-matter jurisdiction "can

never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). "[W]hen subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss." *Giesse v. Secretary of Department of Health and Human Services*, 522 F.3d 697, 702 (6th Cir. 2008).

A motion under Fed. R. Civ. P. 12(b)(1) may be brought either as a facial attack or a factual attack. *Gentek Building Products, Inc. v. Steel Peel Litigation Trust*, 491 F.3d 320, 330 (6th Cir. 2007). Here, it appears that the United States has asserted a facial attack, which "is a challenge to the sufficiency of the pleading itself." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (emphasis omitted).

> When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. If those allegations establish federal claims, jurisdiction exists.

*Id*. (internal citation omitted).

### B. Discussion

#### 1. FTCA

The FTCA "neither *creates* causes of action against the United States nor provides a means of enforcing federal statutory duties." *United States v. Cundiff*, 555 F.3d 200, 217 (6th Cir. 2009) (emphasis in original). "Rather, it constitutes consent to suit and is fundamentally limited to cases in which a private individual would be liable under like circumstances." *Id*. (internal quotation marks and brackets omitted). As the court explained in *Premo v. United States*, 599 F.3d 540 (6th Cir. 2010):

> Sovereign immunity prevents suit against the United States without its consent. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The Federal Tort Claims Act ("FTCA") waives sovereign immunity for certain actions in tort by giving district courts exclusive jurisdiction over those types of civil actions. Under the FTCA, the government may be liable

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, . . . if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
>
> 28 U.S.C.A. § 1346(b)(1). The FTCA "was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Richards v. United States*, 369 U.S. 1, 6, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

*Premo*, 599 F.3d at 544.

Claims under the FTCA involve a two-step analysis. "First the district court applies local law to determine liability and to assess damages. Second, federal law is invoked to bar proscribed recoveries, such as punitive damages." *Palmer v. United States*, 146 F.3d 361, 366 (6th Cir. 1998). The local law that governs an FTCA claim is the law of the place (*i.e.*, the state) where the alleged act or omission occurred. *See* 28 U.S.C. § 1346(b)(1); *Molzof v. United States*, 502 U.S. 301, 305 (1992) ("the extent of the United States' liability under the FTCA is generally determined by reference to state law").

### 2. The discretionary function exception

The gist of plaintiff's claim is that the United States violated the FTCA because it contracted with Calhoun County to house ICE detainees at the County's jail, *i.e.*, that by entering into this contract, the United States breached its duty to provide detainees with constitutionally adequate medical care because it knew that Corizon and Calhoun County provided substandard health care at the jail.

The United States seeks to dismiss this cause of action for lack of subject matter jurisdiction because plaintiff's claim is barred by the FTCA's discretion function exception in 28

U.S.C. § 2680.  The Court agrees.  This exception states that the provisions of 28 U.S.C. § 1346(b) "shall not apply" to:

> (a) <u>Any claim</u> based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or <u>based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused</u>.

28 U.S.C. § 2680(a).[1]  "The discretionary-function exception is an exception to the FTCA's waiver of sovereign immunity."  *Abbott v. United States*, 78 F.4th 887, 899 (6th Cir. 2023).  "[I]t 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.' " *Id*. quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984).

> Courts use a two-part test to apply the discretionary function exception.
>
> First, we ask whether the action is a matter of choice for the acting employee. Second, even if the action is a matter of choice, we also ask whether the relevant choice or exercise of discretion is of the kind that the discretionary function exception was designed to shield.

*Abbott*, 78 F.4th at 900 (internal citations and quotation marks omitted).  *See Mynatt v. United States*, 45 F.4th 889, 896 (6th Cir. 2022) ("In other words, the government is entitled to sovereign immunity only if the complained-of actions are *both* discretionary and of the type the exception was designed to protect.") (emphasis in original).

"The first prong requires this Court to determine whether the challenged actions were discretionary, or whether they were instead controlled by mandatory statutes or regulations."

---

[1] "The first part of this statute is known as the 'due care exception' and the second part of the statute is known as the 'discretionary function exception.'  Both operate to shield the United States from liability based on the Federal Tort Claims Act (28 U.S.C. § 1346(a)) ('FTCA')."  *In re Katrina Canal Breaches Consolidated Litigation*, 627 F. Supp. 2d 656, 665 (E.D. La. 2009).

7

*Milligan v. United States*, 670 F.3d 686, 693 (6th Cir. 2012) (internal quotation marks omitted). To accomplish this, the Court must determine exactly what conduct is at issue and "identify which specific policies or regulations the plaintiff alleges were violated." *Id*. "The focus of this inquiry is on whether the actor had any element of judgment or choice in taking his course of action." *Id*. If the action was made under a mandatory regulation or policy, leaving the actor no judgment or choice, then § 2680(a) does not present an obstacle to the plaintiff's FTCA claim. *Id*. If "discretionary conduct" is involved, then the Court moves to the second prong and asks "whether that judgment is of the kind that the discretionary function exception was designed to shield." *See id*. quoting *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). "The second prong seeks to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Milligan*, 670 F.3d at 693 (citing *Gaubert*, 499 U.S. at 323) (internal quotation marks omitted).

      **a.**    **ICE's decision to enter the contract with Calhoun County was discretionary conduct**

As an initial matter, the alleged conduct is that the United States, through ICE, "contracted with defendant Calhoun County to house its detainees" at the Jail. *See* Amend. Compl. at ¶¶ 78-84, PageID.255-256. This conduct met the first prong, because ICE engaged in discretionary action when it entered into the contract with Calhoun County for the placement and detention of aliens. Congress authorizes the United States to contract with state and local authorities to provide safekeeping and care for federal detainees or prisoners. *See United States v. Logue*, 412 U.S. 521, 529 (1973). The United States exercises its discretion when it decides whether to provide for a detainee's safe-keeping at a federal facility or to contract that safe-keeping to a third party. *See, e.g., Carno v. United States*, No. 17 CV 7998 (NSR), 2019 WL 2287966 at *9 (S.D.N.Y. May 28, 2019) ("The United States has discretion because it is statutorily permitted

8

to *decide* whether it will personally provide for arrestees' safe-keeping or sub-contract that responsibility.") (emphasis in original).

The United States identifies three statutes which grant ICE authority to enter contracts and to place detainees in different facilities. Title 8 U.S.C. § 1103(a)(11)(A) provides that, "[t]he Attorney General, in support of persons in administrative detention in non-Federal institutions, is authorized":

> to make payments from funds appropriated for the administration and enforcement of the laws relating to immigration, naturalization, and alien registration for necessary clothing, medical care, necessary guard hire, and the housing, care, and security of persons detained by the Service pursuant to Federal law under an agreement with a State or political subdivision of a State[.]

Next, 8 U.S.C. § 1357(g)(1) provides that,

> the Attorney General may enter into a written agreement with a State, or any political subdivision of a State, pursuant to which an officer or employee of the State or subdivision, who is determined by the Attorney General to be qualified to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States (including the transportation of such aliens across State lines to detention centers), may carry out such function at the expense of the State or political subdivision and to the extent consistent with State and local law.

Finally, 18 U.S.C. § 4002 provides that the Attorney General "may contract" with any political subdivision for the care and custody of detainees:

> For the purpose of providing suitable quarters for the safekeeping, care, and subsistence of all persons held under authority of any enactment of Congress, the Attorney General may contract, for a period not exceeding three years, with the proper authorities of any State, Territory, or political subdivision thereof, for the imprisonment, subsistence, care, and proper employment of such persons. . . .
>
> The rates to be paid for the care and custody of said persons shall take into consideration the character of the quarters furnished, sanitary conditions, and quality of subsistence and may be such as will permit and encourage the proper authorities to provide reasonably decent, sanitary, and healthful quarters and subsistence for such persons.

*See, e.g.*, *Ortega v. Rowe*, 796 F.2d 765, 766-67 (5th Cir. 1986) (discussing § 4002 in the context of Immigration and Naturalization Service's use of local jails to detain noncitizens); *Ahern v. United States*, No. 2:14-CV-259, 2017 WL 2215633 at *6 (May 19, 2017), *R&R adopted*, 2017 WL 2821949 (S.D. Tex. June 29, 2017) (the Marshals Service retained discretion to contract with a non-federal facility to provide for the safekeeping and care for federal detainees); *Wendt v. United States*, No. 3:16cv849, 2017 WL 1397954 at *1, fn.1 (E.D. Va. April 18, 2017) (noting that ICE housed the plaintiff at a local jail pursuant to an intergovernmental agreement and had statutory discretion to do so pursuant to 18 U.S.C. § 4002).

> b. **ICE's decision to enter the contract is covered by the discretionary function exception**

Next, the Court concludes that the alleged conduct met the second prong because ICE's decision to enter into the contract with Calhoun County is the type of conduct which the discretionary function exception was designed to shield. "[T]he award of contracts by the Government involves a 'discretionary function or duty,' in the exercise of which it is exempt from liability under the Federal Tort Claims Act. 28 U.S.C. § 2680(a)." *Gowdy v. United States*, 412 F.2d 525, 529 (6th Cir. 1969). As the court observed in *Williams v. United States*, 50 F.3d 299, 310 (4th Cir. 1995):

> The decision to hire an independent contractor to render services for the United States is precisely the type of decision that the exception is designed to shield from liability because it involves exercising judgment based on considerations of policy, and the case law clearly establishes that the award of contracts falls within the ambit of the discretionary function exception.

*See Cooper v. United States Marshals Service*, No. 3:09-CV-18, 2010 WL 925794 at *2-3 (E.D. Tenn. March 9, 2010) (the decision to contract for housing federal prisoners at a county jail was "precisely the type of decision that the exception is designed to shield from liability because it involves exercising judgment based on considerations of policy") (quoting *Williams*); *Johnson v.*

10

*United States*, No. Civ. A. 4:05CV40, 2006 WL 572312 at *4-5 (E.D. Va. March 7, 2006) (concluding that the discretionary function exception in § 2680(a) applied to the Marshals Service's decision to contract with a local jail, which "necessarily involves making decisions that are grounded in public policy") (internal quotation marks omitted). *See also, Hudson v. United States*, No. 2:06-CV-01, 2008 WL 517009 at *7 (E.D. Tenn. Feb. 25, 2008) ("Even where there is a claim, as here, that the contractor chosen is incompetent and the Government had knowledge of the alleged incompetency, the award of contracts by the Government is a discretionary function or duty, in the exercise of which it is exempt from liability under the Federal Tort Claims Act. 28 U.S.C. § 2680(a)") (citing *Gowdy*) (internal quotation marks omitted). For all of these reasons, plaintiff's complaint should be dismissed for lack of subject matter jurisdiction.[2]

### III.    RECOMMENDATION

Accordingly, I respectfully recommend that the United States' combined motion to dismiss (ECF No. 42) be **GRANTED** and that it be **dismissed** from this action.

Dated:  July 17, 2024                               /s/ Ray Kent
                                                    RAY KENT
                                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[2] In its combined motion, the United States also seeks to dismiss plaintiff's FTCA claim pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiff failed to state a cause of action for an underlying tort under Michigan law.  While it is not entirely clear, the amended complaint appears to involve negligence in hiring or supervising a contractor (*i.e.*, Calhoun County).  The United States contends that these "are not recognized torts under Michigan law."  *See* United States' Brief (ECF No. 43, PageID.308).  However, it is unnecessary to address whether Michigan recognizes such torts because the alleged conduct – entering into a contract with Calhoun County – is barred by the FTCA's discretionary function exception.