UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARENCE DEAN,

        Plaintiff,                              Case No. 1:23-cv-408

v.                                                 Hon. ROBERT J. JONKER

CALHOUN COUNTY, *et al.*,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Clarence Dean of Nassau, Bahamas, filed this lawsuit on April 19, 2023 in his capacity as the personal representative of the Estate of Jesse Dean. Calhoun County (the "County") is one of the defendants. In the "Introduction" of the amended complaint (ECF No. 39), plaintiff stated that,

> Jesse Dean was an Immigration Customs Enforcement [ICE] detainee held at the Calhoun County Jail in Battle Creek, Michigan. He arrived at the jail on December 31, 2020. Shortly after arriving, he sought medical care for serious medical symptoms. His complaints were repeatedly dismissed and his symptoms ignored. After suffering from severe pain for over a month, he died on February 5, 2021, of a treatable condition.

Amend. Compl. at PageID.241. This matter is now before the Court on defendant County's motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 45).

**I.**    **Background**

**A.**    **Allegations in the amended complaint**

Plaintiff set forth the following allegations. On January 2, 2021, Jesse Dean (referred to as "Mr. Dean" or the "decedent") submitted a sick call form stating he had abdominal pain. *Id*. at PageID.243. On January 14th, defendant RN Godzieblewski responded to his

complaint of stomach pain and loss of appetite and ordered him placed on a liquid diet for four days.  *Id*.  She did nothing else.  *Id*. On January 22nd, an LPN saw Mr. Dean in connection with his report of "a great deal of abdominal pain" and gave him acetaminophen.  *Id*.  On January 24th, Mr. Dean "submitted a request notifying medical staff that he had lost 20 pounds in the last three weeks, was weak, could not eat regular meals, had severe stomach pains all night, and needed a special diet to address the matter."  *Id*. at PageID.244.  While medical staff responded to Mr. Dean, they did not treat his condition or refer him to a medical provider regarding the significant weight loss, severe stomach pains, and inability to eat regular meals.  *Id*.

On January 25th, Mr. Dean reported to a housing deputy that he felt like he was going to die and told "an unknown jail or medical staff person" about his extreme abdominal pain.  *Id*.  When this person declined to send him to the hospital, he offered to pay for the visit.  *Id*.  Mr. Dean was told that a provider would see him on January 26th, but this did not occur.  *Id*. at PageID.243-244.  Mr. Dean submitted another request regarding his three weeks of severe pain and need for emergency care.  *Id*.  A provider saw him on January 27th.  *Id*. at PageID.245.

On January 28th defendant Paul Troost, DO, received laboratory results which should have resulted in emergency evaluation and hospitalization.  *Id*.  However, the doctor did nothing.  *Id*.  Mr. Dean was seen by nurses on January 30th and 31st, but they did nothing to address his significant abdominal pain.  *Id*. at PageID.245-246.

On or about February 1st, Mr. Dean called his sister Sharon to describe his pain, worsening condition, and that he felt he was dying.  *Id*. at PageID.246.  Sharon notified the Bahamian Consulate, which "contacted [non-party] Deportation Officer Fish and/or the jail about the situation but the defendants did nothing in response."  *Id*. at PageID.247.  Plaintiff alleged that "[s]upposedly, defendant John or Jane Doe told Fish that all was well."  *Id*.

2

> The Consulate responded to the family "Good evening Ms. Dean, Vice Consul Gibson spoke with Fish this morning and Fish advised that Mr. Dean was seen by medical staff who 'confirmed he is not gravely ill, nor does he suffer from any debilitating sickness. It appears that your brother suffers from hypertension and high cholesterol and that these conditions are not threatening his life at this time.'" [sic] This was a lie and an effort to deceive Mr. [Jesse] Dean's family.

*Id*.

Mr. Dean's condition continued to deteriorate. *Id*. at PageID.247-249. On February 5th a staff member assessed and escorted him to the medical unit, where he was given an intravenous line for hydration. *Id*. at PageID.249. Mr. Dean became unresponsive, EMS was called, and he was pronounced dead in the ambulance at the Jail's sally port. *Id*. at PageID.250.

ICE conducted an investigation into his death and found "numerous instances of significant lapses in the medical care provided to Mr. Dean." *Id*. at PageID.251. Plaintiff further alleged that,

> [T]he Office of the Inspector General of ICE issued a report dated February 1, 2023. The IG evaluated the medical care provided nationwide to ICE detainees. In their self-serving report, they found that there were no problems with that medical care save one. That one was Mr. Dean. The IG's review of the medical files and autopsy report determined that Calhoun County Jail medical staff should have acted more swiftly to meet Mr. Dean's needs after correlating his complaints of worsening symptoms, significant weight loss, hypotension, and fall events. The report found that they did not take the appropriate action to address his continued gastrointestinal complaints, and thus the Inspector General's Report determined that the care provided was not appropriate.

*Id*.

### B. Plaintiff's claims against the County

In his Second Cause of Action, brought pursuant to 42 U.S.C. § 1983, plaintiff alleged that the County was deliberately indifferent to Mr. Dean's serious medical needs in violation of the Fifth and Fourteenth Amendments. Plaintiff sets out two types of claims. First, the County violated Mr. Dean's constitutional rights by entering into a contract with "Corizon

3

Healthcare, and its various subsidiaries, successors or alter egos (Corizon)" (the "contracting claim"). Amend. Compl. at ¶¶ 64-71, 73-76, PageID.253-255. Second, the County violated Mr. Dean's constitutional rights because it had a policy, custom or practice of failing to provide sufficient medical care for inmates and detainees (the "policy and custom claim"). *Id*. at ¶72.A. through ¶72.M., PageID.254-255. Plaintiff seeks compensatory damages, economic damages, and attorney's fees related to Mr. Dean's death. *Id*. at PageID.256-257.

## II.     Motion to dismiss

### A.     Legal standard

The County moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief may be granted. A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

### B.     Discussion

#### 1.     Plaintiff's claims

4

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

### 2. The contracting claim

Plaintiff appears to allege that the County is liable for entering into a contract with Corizon and under a respondeat superior theory.  Specifically, plaintiff alleged that:

> 65. Defendant Calhoun contracted with Corizon to provide medical care to its inmates and detainees.
>
> 66. As defendant Calhoun was well aware, Corizon had a long history of providing unconstitutionally deficient health care to inmates and detainees around the country.
>
> 67. Despite this awareness, defendant Calhoun, whose relationship with Corizon dated back to 1999, repeatedly renewed their contract with Corizon.
>
> 68. Some of Corizon's history is set out in an article written by Greg Dober in the March 2014 issue of Prison Legal News.
>
> 69. Evidence of Corizon's history of deliberate indifference to inmates' medical needs is also set out in Johnson, et al v. Corizon Health Inc., et al, 6: 13-cv· 1855-TC, United States District Court for the District of Oregon (2015).
>
> 70. Other examples are described in a 2015 article entitled "Corizon Health Services Breaks Second Death Settlement Record This Year" in Shadow of Proof.
>
> 71. Nonetheless, defendant Calhoun was deliberately indifferent to the medical needs of inmates and detainees at the jail by maintaining its contract with Corizon and renewing that contract every few years. . . .
>
> 73. Corizon's contract with defendant Calhoun County required Corizon to comply

> with the National Commission of Correctional Healthcare, which provides the minimal standards of healthcare to inmates and detainees. Corizon did not comply with those standards and defendant Calhoun was aware of that failure.
>
> 74. Defendant Calhoun County, acting under the color of state law, was aware of Mr. Dean's serious medical condition and needs and was deliberately indifferent to his medical condition and needs.
>
> 75. Defendant Calhoun County acted in violation of Mr. Dean's fifth and fourteenth amendment rights under the United States Constitution.
>
> 76. This deliberate indifference was the proximate cause of damage to Mr. Dean including, but not limited to, excruciating pain, and suffering loss of enjoyment of life and his resulting death.

Amend. Compl. at PageID.253-255.

"A municipality may not be held liable under § 1983 on a *respondeat superior* theory – in other words, '*solely* because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014), quoting *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). Here, Corizon performed medical services as an agent of the County. "The principle is well settled that private medical professionals who provide healthcare services to inmates at a county jail qualify as government officials acting under the color of state law for the purposes of § 1983" and that a private entity "that contracts to provide medical services at a jail can be held liable under § 1983 because it is carrying out a traditional state function." *Winkler v. Madison County*, 893 F.3d 877, 890, 904 (6th Cir. 2018).

Thus, "Corizon, like a governmental entity, may be held liable under § 1983 if it actually caused the constitutional deprivation." *Nobles v. Quality Correctional Care of Michigan*, No. 1:21-cv-199, 2021 WL 1827077 at *5 (W.D. Mich. May 7, 2021). As the court explained in *Johnson v. Karnes*, 398 F.3d 868 (6th Cir. 2005),

> Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory. The difference, however, is that a private contractor is liable for a

>policy or custom *of that private contractor*, rather than a policy or custom of the municipality.

*Johnson*, 398 F.3d at 877 (internal citations omitted).

In summary, plaintiff's claim is against the private contractor (Corizon) which allegedly violated Mr. Dean's constitutional rights, not the governmental entity (the County) that entered into the contract with Corizon. For these reasons, plaintiff's "contracting claim" against the County should be dismissed with prejudice.

### 3. The policy and custom claim

In addition, plaintiff alleged that "Calhoun County had a policy, custom or practice of failing to provide sufficient medical care for inmates and detainees, including, Mr. Dean." Amend. Compl. at ¶ 72, PageID.253. For plaintiff to prevail in a § 1983 claim against a municipality such as the County, he must show that the alleged federal violation occurred because of a municipal policy or custom.

>[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694.

The issue before the Court is whether plaintiff stated a plausible claim that a County policy or custom caused a constitutional injury to Mr. Dean. "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). "Some factual basis for such claims must be set forth in the pleadings." *Id*.

>In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional

7

injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509.

*Carpenter v. Ottawa County Jail*, No. 1:18-cv-116, 2018 WL 1061489 at *2 (W.D. Mich. Feb. 27, 2018).

A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the policymaker. *Monell*, 436 U.S. at 690.

A "custom" consists of practices which have become permanent and well settled:

> [A]lthough the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a depriation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels. As Mr. Justice Harlan, writing for the Court, said in *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-168, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970): "Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law."

*Id*. at 690-91.

Here, plaintiff set out the alleged "policy, custom or practice" as follows:

> A. A policy, custom or practice of failing to follow the staffing guidelines as set forth in standards published by the National Commission of Correctional Healthcare; namely, the failure to have a Responsible Health Authority (RHA) overseeing the medical staff.
>
> B. A policy, custom or practice of providing financial incentives to employees who limited emergency room visits by inmates or detainees.
>
> C. A policy, custom or practice of failing to train its employees in the recognition of severe, progressive, and life-threatening medical conditions, such as Mr. Dean's.
>
> D. A policy, custom or practice of failing to discipline or reprimand employees who do not follow company policies and/or standards that put inmates' health at risk;

E. A policy, custom or practice of denying inmates and detainees access to appropriate, competent and necessary care for serious medical needs;

F. A policy, custom or practice of failing to provide adequate supervision to medical personnel by an on-site physician;

G. A policy, custom or practice of denying inmates necessary medical care to save money and resources if an inmate or detainee is thought to be serving a short sentence or to be released shortly;

H. A policy, custom or practice of discouraging transferring inmates or detainees to a licensed acute facility and/or hospital for medical care in order to save money and resources;

I. A policy, custom or practice of failing to adequately monitor Corizon's performance to ensure it met staffing commitments and provided quality healthcare;

J. A policy, custom or practice of "back-dating" medical records or "late entries" in medical records and charting; and

K. A policy, custom or practice of failing to enforce and follow the contract terms requiring defendant Corizon to staff the jail with medical professionals licensed in the State of Michigan.

L. A policy, custom or practice of failing to follow their own GI protocol.

M. A policy, custom or practice of retaliating against inmates, detainees and their families for complaints about medical care.

Amend. Compl. at PageID.254-255.

In *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005), the court identified "four avenues" a plaintiff may take to demonstrate the existence of a municipality's illegal policy or custom: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations."

The County contends that plaintiff has only "vaguely asserted claims" under the first, third and fourth avenues and that these pleadings are grossly inadequate to support any of those theories. *See* County's Brief (ECF No. 46, PageID.325-337).

The Court concludes that plaintiff's amended complaint is inadequate because it fails to give the County a fair notice of the claim and the grounds upon which it rests. *See Twombly*, 550 U.S. at 555. Plaintiff did not identify a specific policy statement, ordinance, regulation, or decision officially adopted and promulgated by the policymaker. Nor did he allege facts explaining how any particular policy violated Mr. Dean's constitutional rights during the relevant time period. Similarly, plaintiff did not identify any particular custom in use at the Jail, or how that custom violated Mr. Dean's constitutional rights during the relevant time period.

For these reasons, plaintiff's "policy and custom claim" against the County fails and the County's motion to dismiss should be granted. However, unlike the "contracting claim", the undersigned recommends that the motion to dismiss the "policy and custom claim" be granted without prejudice. Plaintiff should be given the opportunity to file a motion to amend his complaint to set out the specific policies and customs of the County (as opposed to the specific policies and customs of Corizon) which allegedly violated Mr. Dean's constitutional rights.[1]

### III.     RECOMMENDATION

Accordingly, I respectfully recommend that Calhoun County's motion to dismiss (ECF No. 45) be **GRANTED with prejudice** as to the "contracting claim" and **GRANTED without prejudice** as to the "policy and custom" claim.

---

[1] This should not be a time-consuming task. Presumably, plaintiff identified those policies and customs before filing this lawsuit. *See Checkpoint Systems, Inc. v. Hangzhou Century Co.*, No. 5:11CV1199, 2012 WL 2159257 at *7 (N.D. Ohio June 13, 2012) ("A plaintiff and his counsel have a duty to investigate the legal and factual basis for any claims brought").

I further recommend that plaintiff be given a short period of time to amend his complaint to allege the specific policies and customs which allegedly injured Mr. Dean.

Dated:  August 5, 2024                             /s/ Ray Kent
                                                   RAY KENT
                                                   United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).